DECISION AND JUDGMENT ENTRY
{¶ 1} Castle Bail Bonds, Inc., and Donald Castle (collectively referred to as "Castle") appeal the judgment of the Ross County Court of Common Pleas granting judgment in favor of Rosemarie C. Molnar, Trustee, upon her complaint for eviction and to quiet title, and upon his counterclaim for breach of contract. The parties' dispute arises out of a commercial real estate lease between Molnar, as lessor, and Castle, as lessee, which included an option for Castle to purchase the property at a fixed price at the end of the lease term. Castle argues that the trial court erred in finding that the six-month notice provision of the option contract was necessary to allow Molnar an Internal Revenue Code 1031 exchange. Because we find that Castle failed to raise this issue below, we decline to address it here. Castle also contends that the trial court erred in failing to strictly construe the notice provision of the contract against Molnar, the drafter of the lease agreement. Because we find the intent of the parties with regard to the notice provision is readily ascertainable from the four corners of the document, we decline to employ the secondary rule of contract construction that requires a court to construe any ambiguity strictly against the drafter of the contract. Finally, Castle contends that the trial court abused its discretion by failing to balance the equities before denying his counterclaim for specific performance. Because we find that the trial court engaged in a balancing of the equities, and reasonably concluded that the equities weighed in Molnar's favor, we disagree. Accordingly, we overrule each of Castle's three assignments of error and affirm the trial court's judgment.
 I. {¶ 2} Molnar, as Trustee, owns the real property located at 19 North Paint Street, Chillicothe, Ohio. On or about February 1, 1997, her husband, acting on her behalf, leased the premises to Robyn Gray (the "Gray Lease"). The Gray Lease was for a term of five years, to expire on January 31, 2002. It required the payment of monthly rent of five hundred fifty dollars. It also required a security deposit equal to one month's rent, which would apply to the last month's rent, provided Gray did not breach the terms of the lease. The Gray Lease also contained an option to purchase that provided: "Lessee has an option to purchase said premises for Fifty-nine Thousand Dollars ($59,000.00) at the end of the sixty (60) monthy (sic) lease under the following terms: $19,000.00 — Down Payment[;] $40,000.00 — At a rate of .75% less than Huntington Banks with no closing cost other than attorney fees, for 10 years."
 {¶ 3} Article 6 of the Gray Lease provided, in relevant part, that Molnar rented the premises "as is," and that "[a]ny requirements of the Tenant(s) for the demised premises shall be at the sole cost and expense of the Tenant(s)[.]" Additionally, Article 8 of the Gray Lease provides that the tenant shall not make any alterations, additions, or improvements to the premises without the written consent of the landlord, and that any alterations, additions, or improvements to the premises, made by either party, shall become the property of the landlord and remain with the premises.
 {¶ 4} Gray allegedly made improvements to the property. Any improvements she made were without the written consent of the landlord, in contravention of the lease. At some point thereafter, Gray expressed a desire to get out of the lease. Melonie Everhart indicated to Gray's agent, Rick Moran, that she knew someone interested in buying out Ms. Gray's interest in the property and later introduced Moran to Castle. Moran indicated that Gray was interested in a buyout that would compensate her for the cost of improvements she made to the property. Thereafter, Castle met with Moran at 19 North Paint Street to discuss taking possession of the property.
 {¶ 5} On March 22, 2000, Castle paid Robyn Gray twelve thousand five hundred dollars, purportedly as payment for both the improvements Gray made to the real estate, and for the buyout of the existing lease with the option to purchase. On March 27, 2000, Molnar's husband and Donald Castle, individually, and as President of Castle Bail Bonds, Inc., executed a new lease for the subject premises to commence on April 1, 2000 (the "lease").[1] On or about April 6, 2000, Molnar's husband sent a letter to Robyn Gray via regular U.S. Mail providing notice of the termination of her tenancy and returning her security deposit.
 {¶ 6} The lease is similar to the Gray Lease, but contains some notable differences. Article 5a of the lease deals with the option to purchase. It provides: "With six (6) months prior written notice to Landlord (on or before August 1, 2001), Tenant has the option to purchase said Leased Premises for Fifty-Nine Thousand Dollars ($59,000.00) at the Lease expiration (January 31, 2002) with cash or under the following terms: * * * $19,000 — Down payment[;] 40,000.00 — at a rate of .75% less than Huntington Bank's ten-year fixed rate available to Landlord with no closing costs other than attorney's fees payable monthly over 10 years."
 {¶ 7} Additionally, Article 24 of the lease contains the following notice requirements:
 {¶ 8} Wherever in this Lease, it shall be required or permitted that notice or demand shall be given or served by either party to this Lease to or on the other, such notice or demand shall be given or served in writing and forwarded by certified or registered mail or by delivery to the premises, addressed as follows:
 {¶ 9} TO THE LANDLORD:
 {¶ 10} John R. Molnar 8623 Wellsley Court Cincinnati, OH 45249
* * *
 {¶ 11} TO THE TENANT:
 {¶ 12} Donald Castle Castle Bail Bond, Inc. 210 N. Fountain Springfield, OH 45504.
* * *
 {¶ 13} Such addresses may be changed from time to time by either party by service or notice as above provided.
 {¶ 14} The Molnar's did not receive written notice of Castle's intent to exercise the purchase option by certified or registered mail before the deadline contained in the Castle Lease. Accordingly, on December 7, 2001, Molnar's son and agent, Joe Molnar, sent Castle a letter inquiring about Castle's intention to continue possession of the property under a new lease. Upon receipt of Joe Molnar's letter, Castle telephoned him to express his dissatisfaction. During that conversation Castle indicated that he had sent written notice of his intent to exercise the option via regular mail with his July rent payment — a letter that the Molnars deny receiving. Castle also orally expressed his intention to exercise the option to purchase during that conversation. In January 2002, Castle tendered a cashier's check for nineteen thousand dollars as a down payment for the purchase of the property. Molnar rejected the tender on January 29, 2002.
 {¶ 15} On February 15, 2002, Molnar initiated a forcible entry and detainer action in the Chillicothe Municipal Court seeking restitution of the premises and a judgment for the fair rental value of the property, alleged to be six hundred fifty dollars per month, for each month Castle continued to occupy the property. Thereafter, the Chillicothe Municipal Court transferred the case to the Ross County Court of Common Pleas. The parties do not dispute that Castle filed an answer and counterclaim, wherein Castle sought specific performance, or, in the alternative, damages in excess of twenty-five thousand dollars.[2] The trial court granted Molnar's motions to file both an amended complaint, adding a cause of action to quiet title, and a second amended complaint, attaching the second lease, rather than the first lease, as an exhibit.
 {¶ 16} Molnar moved the court for summary judgment, which the trial court denied. Having waived their right to jury trial, the parties tried all issues to the bench. On October 19, 2004, the trial court rendered a judgment in favor of Molnar on each of her three causes of action, and upon Castle's counterclaim. In the judgment entry, the trial court made findings of fact, generally comporting with the statement of the facts above. The trial court also made the following conclusions of law:
 {¶ 17} 1. The function of a requirement that notice be transmitted by certified or registered mail is to provide a means of resolving disputes regarding the fact of delivery of notice.
 {¶ 18} 2. If one interpretation of a disputed provision would nullify or render meaningless another part of the contract, while a different interpretation would give effect to all parts or words of the contract, the Court should utilize the latter interpretation.
 {¶ 19} 3. The principle `expression unius est exclusion alterius' means that the expression in a contract of one or more things of a class implies the exclusion of all others not expressed. The express inclusion of one term implies that the absence of another similar term was intentional.
 {¶ 20} 4. The inclusion of certified mail or registered mail excludes notice by ordinary mail. Thus, delivery can only be construed to mean a method of notice other than by mail such as personal delivery.
 {¶ 21} 5. [Castle] failed to comply with the notice requirements of Section 24 of the lease and therefore, failed to properly exercise the option to purchase.
 {¶ 22} 6. Although it is disputed whether Rick Moran or Robyn Gray made improvements to the property, any improvements made by tenants under the lease became the property of the landlord pursuant to Article 8 of the lease agreement.
 {¶ 23} 7. [Molnar] received no benefit from the payment made by [Castle] to Rick Moran for the improvements which would justify the application of equitable relief. Moreover, [Molnar was] neither aware that the prior tenants made improvements nor of the agreement between [Castle] and the prior tenants for payment of $12,500.00 for the improvements and that this was what induced [Castle] to enter into the lease with option to purchase.
 {¶ 24} 8. Timeliness of the exercise of the option to purchase was crucial so as to allow [Molnar] the opportunity to plan for a tax favored non-recognition transaction.
 {¶ 25} 9. Failure to provide notice of the exercise of the option as per the lease agreement prejudiced [Molnar].
 {¶ 26} 10. [Castle is] not entitled to equitable relief.
 {¶ 27} 11. Pursuant to stipulation, [Castle was] properly served with an appropriate notice to vacate and this Court has jurisdiction of [Molnar's] claim for eviction and for quiet title.
 {¶ 28} 12. [Molnar] is entitled to possession of the real property located at 19 North Paint Street, Chillicothe, Ohio and a writ of restitution of the premises shall issue.
 {¶ 29} 13. [Castle has] no claim to the real property located at 19 North Paint Street and title to the real property is quieted in the name of [Molnar, Trustee].
 {¶ 30} 14. The reasonable rental value for the real property located at 19 North Paint Street, Chillicothe, Ohio from February 1, 2001 through April 30, 2004 is Six Hundred Fifty Dollars ($650.00) per month.
 {¶ 31} 15. [Molnar] is entitled to damages in the sum of Twenty-Five Thousand Three Hundred Fifty Dollars ($25,350.00) ($650.00 per month × 39 months — 2/1/01 through 4/30/04 = $25,350.00).
 {¶ 32} 16. Judgment is rendered in favor of [Molnar] on [Castle's] claim for breach of contract.
(Citations omitted.)
 {¶ 33} Castle timely appeals raising the following assignments of error: [I.] THE TRIAL COURT ERRED IN FINDING THAT THE SIX MONTH NOTICE PROVISION ENGRAFTED ONTO THE OPTION TO PURCHASE CONTRACT WAS NECESSARY "IN ORDER TO ALLOW FOR THE LESSOR TO ARRANGE FOR REPLACEMENT PROPERTY IN ORDER TO QUALIFY FOR AN INTERNAL REVENUE CODE 1031 EXCHANGE * * *." [II.] THE TRIAL COURT ERRED IN FAILING TO STRICTLY CONSTRUE AGAINST THE LESSOR/SCRIBNER A PROVISION WHICH WORKED A FORFEITURE OF THE LESSEE'S RIGHTS UNDER AN OPTION TO PURCHASE CONTRACT. [III.] THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FULLY CONSIDER THE CIRCUMSTANCES AND BY FAILING TO ENGAGE IN BALANCING OF THE EQUITIES BEFORE DENYING DEFENDANTS CLAIM FOR SPECIFIC PERFORMANCE WHICH DENIAL RESULTED IN A FORFEITURE.
 II. {¶ 34} In his first assignment of error, Castle contends that the trial court erred in finding that the requirement of six-months notice to exercise the option to purchase was necessary to allow Molnar to engage in a tax-favored Internal Revenue Code Section 1031 exchange upon the sale of the 19 North Paint Street property. Specifically, Castle contends that the option creates a contractual right to either a cash purchase or an installment purchase of the real estate. Therefore, he asserts that the transaction cannot provide the basis for a Section 1031 "like-kind exchange."
 {¶ 35} Our review of the record reveals Joe Molnar testified that he incorporated the six-month notice requirement into leases where the tenant had the option to purchase the property to make sure that his family had adequate time to find a replacement property if they elected to engage in a Section 1031 exchange. The record also reveals that Castle never challenged the substance of Joe Molnar's testimony at trial, either upon cross-examination or by introducing other evidence tending to demonstrate that the transaction could not qualify for an exchange under Section 1031.
 {¶ 36} We will not consider any error a party failed to bring to the trial court's attention at a time when the trial court could have avoided or corrected the error. Schade v. CarnegieBody Co. (1982), 70 Ohio St.2d 207, 210. It is axiomatic that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. Shover v.Cordis Corp. (1991), 61 Ohio St.3d 213, 220 overruled on other grounds in Collins v. Sotka (1998), 81 Ohio St.3d 506. Because Castle failed to raise this issue below, we find that he has waived his right to argue it here. Accordingly, we overrule Castle's first assignment of error.
 III. {¶ 37} In his second assignment of error, Castle contends that the trial court erred in failing to strictly construe the notice provision of the lease against Molnar, the drafter, where the provision caused a forfeiture of Castle's rights under the lease. Specifically, Castle argues that the language in the notice provision is patently ambiguous, and, therefore, the trial court should have strictly construed the provision against Molnar to prevent a forfeiture of his rights under the lease.
 {¶ 38} "In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties."Aultman Hosp. Ass'n. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53; Employers' Liability Assurance Corp. v. Roehm
(1919), 99 Ohio St. 343, syllabus; Skivolocki v. East Ohio GasCo. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v.Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. We read a contract as a whole and gather the intent of each party from a consideration of the whole. Foster WheelerEnviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.
(1997), 78 Ohio St.3d 353, 361. Where possible, a court must construe an agreement to give effect to every provision in the agreement. In re All Kelley Ferraro Asbestos Cases,104 Ohio St. 3d 605, 2004-Ohio-7104, at ¶ 29, citing Foster WheelerEnviresponse at 362, quoting Farmers Natl. Bank v. DelawareIns. Co. (1911), 83 Ohio St. 309, paragraph six of the syllabus.
 {¶ 39} Where a contract is clear and unambiguous, its interpretation is a matter of law. Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322. We review questions of law de novo. Nationwide Mut.Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107,108, citing Ohio Bell Tel. Co. v. Pub. Util. Comm. (1992),64 Ohio St.3d 145, 147.
 {¶ 40} Contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible to more than one interpretation. United States Fid. Guar. Co. v. St. ElizabethMed. Ctr. (1998), 129 Ohio App.3d 45, 55. Where ambiguity exists, the interpretation of the parties' intent constitutes a question of fact. Center Ridge Ganley, Inc. v. Stinn (1987),31 Ohio St.3d 310, 314. We will not overturn the trial court's interpretation of facts absent an abuse of discretion. OhioHistorical Soc. v. Gen. Maintenance Eng. Co. (1989),65 Ohio App.3d 139, 147.
 {¶ 41} Here, the lease's notice provision provides: "Wherever in this Lease, it shall be required or permitted that notice or demand shall be given or served by either party to this Lease to or on the other, such notice or demand shall be given or served in writing and forwarded by certified or registered mail or by delivery to the premises, addressed as follows * * * [.]" Castle contends that the term "delivery" as used in this provision is ambiguous, and therefore, should be construed strictly against Molnar. We disagree.
 {¶ 42} The Ohio Supreme Court has held that: "In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." Bank v. Insurance Co.
(1911), 83 Ohio St. 309, paragraph six of the syllabus. To interpret the term "delivery" to permit notice via ordinary mail would nullify or render meaningless the portion of the provision specifically requiring the parties to give notice via certified or registered mail. Therefore, based upon the language employed by the parties, and construing the notice provision as a whole, it is plain and unambiguous that the parties intended that any notice provided by mail was to be sent via certified or registered mail.
 {¶ 43} Because the intent of the parties is clear from the four corners of the document, the notice provision of the Castle Lease is not ambiguous. Therefore, we find it unnecessary to employ the secondary rule of contract construction that requires a court to construe any ambiguity strictly against the drafter of the contract. Malcuit v. Equity Oil Gas Funds, Inc. (1992),81 Ohio App.3d 236, 239-240, citing Raphael v. Flage (Sept. 20, 1989), Lorain App. No. 89CA004539. Accordingly, we overrule Castle's second assignment of error.
 III. {¶ 44} In his third assignment of error, Castle contends that the trial court abused its discretion by failing to fully consider the circumstances and by failing to engage in a balancing of the equities before denying his claim for specific performance. Because we find that the trial court engaged in a balancing of the equities, and reasonably concluded that the equities weighed in Molnar's favor, we disagree.
 {¶ 45} Castle relies on the equitable maxim that "equity abhors a forfeiture" and our previous recognition that a court of equity will not declare a forfeiture where the equities of the parties can be adjusted. Chillicothe Metro. Housing Auth. v.Anderson (June 28, 1988), Ross App. No 1406. However, before we address the respective equities of the parties, we find it necessary to address the nature and purpose of an option contract.
 {¶ 46} An option is an agreement to keep an offer open for a specified time; it limits the customary power of an offeror to revoke his offer before its acceptance. Ritchie v. Cordray
(1983), 10 Ohio App.3d 213, 215, citing George Wiedemann BrewingCo. v. Maxwell (1908), 78 Ohio St. 54; Restatement of the Law 2d, Contracts (1981) 73-74, Section 25. It is well-settled that "time is of the essence of an option." Urology Services, Inc. v.Greene (March 6, 1986), Cuyahoga App. No. 50205, citing 3 Williston on Contracts (1962) 2390, Section 853. Moreover, in order for an exercise of an option to be binding upon the optionor, "it must be exercised in the manner provided for in the instrument creating the option on or before the time specified.'"Urology Services, supra, quoting Mother Ruckers, Inc. v.Viking Acceptance, Inc. (Jan. 13, 1983), Montgomery App. No. 7890. See, also, Ritchie, supra, at 215, citing Schirtzingerv. Albery (May 25, 1971), Franklin App. No. 9984; Restatement of the Law 2d, Contracts (1981) 147, Section 60.
 {¶ 47} The Eighth Appellate District has previously followed the general rule that an option must be exercised in accordance with the terms of the instrument creating the option. In Rowe v.Sylvester (Apr. 7, 1994), Cuyahoga App. Nos. 65014 and 65022, the court held that where a lease agreement required notice by certified mail to exercise an option to purchase, a purported exercise by ordinary mail did not comply with the lease requirements and was consequently invalid. Additionally, the Sixth Appellate District has held that: "Equity will not relieve a lessee of the consequences of his failure to give written notice of renewal of the lease within the time required by the provisions of the lease when the failure resulted from the negligence of the lessee unaccompanied by fraud, mistake, accident or surprise and unaffected by the conduct of the lessor." Ahmed v. Scott (1979), 65 Ohio App.2d 271, 276-277. However, Castle notes that at least one Ohio court has recognized that, under some circumstances, equity will step in to prevent a forfeiture.
 {¶ 48} In Ward v. Washington Distributors, Inc. (1980),67 Ohio App.2d 49, a lessee failed to give timely notice of its intent to exercise an option to renew its lease after making over $72,000 in improvements to the rental property. Upon receiving notice that the lease was about to expire, the lessee gave notice of its intent to exercise the option thirty days late. The lessor conceded that the lessee's failure to give timely notice was an honest, good faith mistake, but sought to evict the lessee. The trial court denied the lessee's request for equitable relief and ordered the issuance of a writ of eviction.
 {¶ 49} On appeal, the Sixth Appellate District noted that: "Equity will relieve a lessee from the consequences of a failure to give notice at the time, or in the form and manner, required as a condition precedent to the renewal of a lease, where such failure results from accident, fraud, surprise or honest mistake, and has not prejudiced the lessor[.]" Ward at 53. Additionally, the court found that: "Even when there is an absence of an honest mistake by the lessee, where the lessee has made valuable improvements to the leased premises, the lessee should not be denied equitable relief from his own neglect or inadvertence if a forfeiture of such improvements would result provided, there is no prejudice to the landlord." Id. at 54. Having found that the lessee's failure to timely exercise the option was an honest mistake, and that, in the absence of equitable relief, the lessee would forfeit more than $72,000 in improvements to the real property, the appellate court reversed the trial court's judgment and granted the lessee's request for equitable relief. Id.
 {¶ 50} Here, Castle argues that, like the lessee in Ward,
he will forfeit $12,500 of improvements to the real property if the trial court's judgment stands. Additionally, he argues that Molnar suffered no prejudice as a result of his failure to give timely notice of his intent to exercise the option in the manner prescribed in the lease. Accordingly, Castle contends that the trial court abused its discretion by failing to grant him equitable relief.
 {¶ 51} In reviewing the grant or denial of the equitable remedy of specific performance, the Ohio Supreme Court has noted: "Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case." Spengler v. Sonnenberg (1913),88 Ohio St. 192, 203. Thus, we review the trial court's denial of specific performance for abuse of discretion. SanduskyProperties v. Aveni (1984), 15 Ohio St.3d 273, 275.
 {¶ 52} An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard of review, we must not substitute our judgment for that of the trial court. In re Jane Doe I (1991),57 Ohio St.3d 135, 138. We must presume the findings of the trial court are correct because the trial judge is best able to observe the witnesses and use those observations in weighing the credibility of the testimony. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 81.
 A. {¶ 53} Castle First argues that the parties intended Castle to assume the Gray Lease and its option to purchase, rather than execute a new lease. Therefore, Castle urges this court to apply equitable principles to consider the substance, rather than the form of the transaction, and equitably apply the terms of the Gray Lease to the transaction. Such an interpretation would favor Castle because the purchase option in the Gray Lease did not require the lessor to give six months notice of intent to exercise the option.
 {¶ 54} However, the record contains ample evidence to support the trial court's conclusion that the parties intended to execute a new lease, containing the six-month notice provision, rather than an assumption of the Gray Lease. Specifically, Castle testified that he understood that he was executing a new lease agreement, and that the terms of the new lease "would be very similar to the original lease." Further, Castle testified that he understood that he would have an option to purchase the building if he provided notice of his intention to do so six months before the expiration of the lease. Accordingly, Castle's argument that the trial court should equitably apply the terms of the Gray Lease must fail.
 B. {¶ 55} Next, Castle argues that the trial court improperly refused to consider the forfeiture of the $12,500 payment Castle made to Gray simply because Molnar did not benefit from said payment. Castle argues that a causal connection between benefit and detriment may be essential in the application of the equitable doctrines of unjust enrichment and quantum meruit, but that it does not apply in the balancing of equities required in the context of specific performance and forfeiture. In her brief, Molnar notes that Castle asserts no authority to support this broad statement of law.
 {¶ 56} Black's Law Dictionary defines a "forfeiture" to include, in relevant part: "A deprivation or destruction of a right in consequence of the nonperformance of some obligation or condition." Black's Law Dictionary 650 (6th ed. 1990). Additionally, Black's also defines "deprivation" as: "A taking away or confiscation * * *." Black's Law Dictionary 442 (6th ed. 1990). Thus, a forfeiture connotes a taking away or confiscation of a right for failure to perform some obligation or condition.
 {¶ 57} Here, Castle paid $12,500 to Gray, purportedly in exchange for the improvements she made to the leased premises, and to buyout her rights under the Gray Lease, including the option to purchase the leased premises. The trial court specifically found that: (1) pursuant to the terms of the Gray Lease, any improvements made to the property during the tenancy became the property of the landlord; (2) Molnar received no benefit from the payment Castle made to Gray for the improvements; (3) Molnar was not aware that Gray made improvements to the premises; and (4) Molnar was not aware that Castle made a $12,500 payment to Gray for the improvements and that said payment induced Castle to enter into the Castle Lease. The record supports these findings.
 {¶ 58} Because the terms of the lease provided that any improvements became the property of the landlord, and Molnar neither knew about, nor received any benefit of the $12,500 payment to Gray, the trial court reasonably concluded that Molnar did nothing to deprive Castle of the $12,500 he paid to Gray. Accordingly, we conclude that the trial court did not abuse its discretion in determining that Castle's $12,500 payment to a third party was not relevant in balancing the equities between Castle and Molnar.
 C. {¶ 59} Next, Castle argues that the trial court failed to consider Castle's forfeiture of approximately $19,000 in equity in the subject property. Castle bases this figure upon the testimony of Joe Molnar, who testified that the reasonable rental value of the property at the time of trial was $650 to $750 per month. Joe Molnar further testified that he tries to secure rental values approximating ten percent of the fair market value of the properties he manages. In his testimony, he also agreed that the fair market value of the building at 19 North Paint Street could be approximately $78,000. Thus, Castle contends that the trial court's insistence upon strict compliance with the notice caused him to forfeit $19,000 in equity ($78,000 fair market value-$59,000 option purchase price).
 {¶ 60} We note that the trial court made no specific finding regarding the fair market value of the property. Nor did Castle invite the court to make such a finding in his proposed findings of fact and conclusions of law. However, based upon Joe Molnar's testimony, that he tries to secure rental values approximating ten percent of the fair market value of a property, and the trial court's finding that the reasonable rental value of the property was $650 per month, the record would support a finding of a fair market value anywhere between $65,000 and $78,000. Thus, the record would support a finding that, at the time of the trial, the subject property was worth between $6,000 and $19,000 more than the agreed option price.
 {¶ 61} However, we cannot conclude that the trial court abused its discretion in failing to weigh any increase in the market value of the property in Castle's favor. The very nature of a purchase option contemplates that the optionee will acquire that value if he exercises the option according to its terms, and that the optionor will retain that value if the optionee fails to exercise the option. As the Eighth Appellate District noted in Urology Services, supra, "`because it is the optionor alone who is bound by the agreement until the date on which it is exercised, we think that fairness militates against demanding more from the optionor than he lawfully agreed to give and instead obligates us to strictly enforce the agreement to insure that neither party is prejudiced by a judicially authored revision of the agreement.'" Id., quoting Western Sav. Fund v.Southeastern Pennsylvania Transp. Auth. (1981), 285 Pa Sup. 187,427 A.2d 175, 180.
 {¶ 62} Here, Molnar agreed to sell the property for $59,000 provided that Castle gave her six months written notice of his intention to exercise the option via certified or registered mail. The trial court specifically found that Molnar did not receive the notice as required by the terms of the option. Therefore, based upon the foregoing, the trial court could reasonably conclude that Molnar was contractually entitled to benefit from any increase in the fair market value of the property.
 D. {¶ 63} Castle next argues that, in balancing the equities, the trial court abused its discretion by failing to make a specific finding as to whether Molnar timely received actual
notice of Castle's intent to exercise the purchase option, albeit by ordinary rather than certified or registered mail. Castle contends that the determination of whether Molnar actually received the letter purportedly sent with the July rent payment is critical to a proper balancing of the equities. Specifically, Castle contends that if Molnar actually received timely notice of his intent to exercise the option, even by ordinary mail, it would be unconscionable to require strict compliance with the terms of the option requiring notice be served by certified or registered mail. Additionally, Castle contends that if Molnar actually received the ordinary mail notice of his intent to exercise the option, Article 21 of the lease obligated Molnar to: (1) notify Castle of his failure to strictly comply with the terms of the option; and (2) give Castle an opportunity to cure his default.
 {¶ 64} Under the doctrine of invited error, a party may not take advantage of an error that he invited or induced the trial court to make. State v. Bey (1999), 85 Ohio St.3d 487, 493. The Ohio Supreme Court has held that: "[A] litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible." State v. Kollar (1915), 93 Ohio St. 89, 91.
 {¶ 65} Our review of the record reveals that Castle's own proposed findings of fact and conclusions of law contain no proposed finding regarding the receipt or non-receipt of the letter Castle allegedly sent via ordinary mail, wherein he claims to have exercised the purchase option. While Castle's current argument might have merit, Castle's own conduct induced the trial court to omit a specific finding regarding Molnar's actual receipt or non-receipt of the letter. Similarly, we note that Castle never mentioned the provisions contained in Article 21 of the lease, or even remotely suggest their relevance to the parties' dispute, either at trial or in his proposed findings of fact. Accordingly, we will not permit Castle to take advantage of an error which he himself invited or induced the trial court to make.
 E. {¶ 66} Finally, Castle argues that, after finding the delivery provisions of Article 24 applicable to the notice requirement of the option to purchase, the trial court improperly declined to determine the materiality of the Article 24 delivery requirements. Castle argues that the trial court should have analyzed the breach pursuant to the framework set forth in Restatement of the Law 2d Contracts, Section 241, to determine whether there had been a material failure of performance. That section enumerates five factors to consider in determining whether there has been a material failure of performance: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with the standards of good faith and fair dealing.
 {¶ 67} Here, Castle contends that: (1) Molnar failed to demonstrate damage flowing from his failure to notify of his intent to exercise the option via certified mail because he believes Molnar could not engage in a Section 1031 like-kind exchange; (2) Molnar would receive the exact compensation contemplated by the option, plus additional rental income during the delay occasioned by his breach; (3) Castle would suffer forfeiture of the $12,500 payment he made to Gray; (4) There is no question of Castle's intent to comply with the terms of the option, given his timely tender of the down payment; and (5) Castle's failure to comply with the delivery requirements stated in the Lease, was the result of a mistake, caused by the ambiguity of the language employed in the lease.
 {¶ 68} Although the trial court did not specifically address each of the factors listed in Restatement Section 241, we cannot conclude that the trial court entirely failed to engage in the analysis as alleged by Castle. Instead, we conclude, based upon our analysis above, that the trial court did not abuse its discretion in weighing the various factors in a manner contrary to Castle's position.
 {¶ 69} Specifically, in section II, above, we noted that Joe Molnar testified that the purpose of the six-month notice provision was to ensure that his family had adequate time to find a replacement property if they elected to engage in a Section 1031 exchange. Thus, there was some evidence tending to support the trial court's finding that Molnar was deprived of theopportunity to plan for a tax-favored, non-recognition transaction. Castle never challenged the substance of that testimony at trial, either upon cross-examination or by introducing other evidence tending to demonstrate that the transaction could not qualify for a Section 1031 exchange.
 {¶ 70} Additionally, in subsection D, above, we noted that the very nature of a purchase option contemplates that the optionee will acquire any increase in the fair market value of the property if he exercises the option according to its terms, and that the optionor will retain that value if the optionee fails to exercise the option. Thus, by requiring strict compliance with the terms of the purchase option, the trial court necessarily, albeit impliedly, allocated the benefit of any increase in the fair market value to Molnar.
 {¶ 71} Finally, as we found in subsection B, above, the trial court did not abuse its discretion in determining that Castle's $12,500 payment to a third party was not relevant in balancing the equities between Castle and Molnar. The record supports the trial court's findings that the terms of the lease provided that any improvements became the property of the landlord, and that Molnar was unaware of any improvements Gray made, and neither knew about nor received any benefit of Castle's $12,500 payment to Gray. Thus, the trial court reasonably concluded that Molnar did nothing to deprive Castle of the $12,500, and should not be the party to lose the benefit of her bargain as a result of Castle's negligence.
 {¶ 72} Therefore, we cannot find that the trial court abused its discretion by strictly enforcing the terms of the option and denying Castle's request for equitable relief. Unlike the situation in Ward, supra, Molnar did not concede that Castle's failure to give timely notice was the result of an honest, good-faith mistake. Additionally, the trial court found that Molnar did suffer prejudice as a result of Castle's failure to give timely notice through the loss of the opportunity to pursue a Section 1031 exchange. Moreover, the trial court reasonably concluded that Castle had not made valuable improvements to the leased premises that would entitle him to equitable relief from the consequences of his own neglect. Accordingly, we reject Castle's final argument and overrule his third assignment of error.
 IV. {¶ 73} Based upon the foregoing, we overrule each of Castle's three assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that costs herein be taxed to the appellants.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. and McFarland, J.: Concur in Judgment and Opinion.
[1] Shortly after executing the lease, the parties discovered that Molnar, as trustee, was the actual owner of the subject real property. Accordingly, they executed a new lease, identical in all respects to the first lease, except that the second lease substituted Rosemarie C. Molnar, Trustee, as the landlord.
[2] We note that Castle's original answer and counterclaim is not part of the record on appeal.