**KENNEDY MALL, LTD., Plaintiff–Appellant,**

v.

**BROWN GROUP RETAIL, INC., Defendant–Appellee.**

No. 02–4226.

United States Court of Appeals, Sixth Circuit.

July 8, 2004.

District of Tennessee, sitting by designation

James M. Dobran, David A. Fantauzzi, William J. Miklandric, Jr., Youngstown, OH, for Plaintiff–Appellant.

Neil D. Schor, Harrington, Hoppe & Mitchell, Youngstown, OH, Ned C. Gold, Jr., Harrington, Hoppe & Mitchell, Warren, OH, for Defendant–Appellee.

Before MARTIN and SUTTON, Circuit Judges; and WILLIAMS, District Judge.*

SUTTON, Circuit Judge.

Kennedy Mall, Ltd. seeks review of a final order granting summary judgment to Brown Group Retail, Inc. in a dispute over the cancellation of a shopping mall lease. Under a ten-year lease between Kennedy Mall (landlord) and the Brown Group (tenant), the Brown Group had two opportunities to cancel the lease prior to its natural expiration date so long as it met several conditions enumerated in the lease. An additional provision in the lease said that if Brown Group opted to cancel the lease, it had to make a termination rent payment to Kennedy Mall "concurrently with" its notice to cancel the lease. *Id.* At issue is whether this additional provision amounts to a condition precedent to cancelling the lease, which was not fully satisfied at the time of cancellation, or a separate payment provision, which is fully enforceable but which is not required to cancel the lease. The district court determined that full payment of the additional money was not a condition precedent to cancellation of the lease. We agree and affirm.

I.

On April 7, 1995, Kennedy Mall and the Brown Group entered into a ten-year retail lease, which contained the following termination provision:

*54. Tenant's Cancellation Privilege*

Tenant is granted the right and privilege to cancel and terminate this Lease at the end of the third lease year (Tenant's "First Cancellation Privilege") and at the end of the sixth lease year (Tenant's "Second Cancellation Privilege") by giving a written registered mail notice of

---

* The Honorable Glen M. Williams, Senior United States District Judge for the Western District of Virginia, sitting by designation.

its intention to do so after said third lease year or after said sixth lease year (as the case may be), provided:

(a) Tenant is not in default of any of the terms, covenants and provisions of this Lease at that time;

(b) With respect to Tenant's First Cancellation Privilege, Tenant's gross sales, as defined in Clause 5 of this Lease, are less than $795,000.00 in each of the first three lease years, to be evidenced by a certification of a certified public accountant and Tenant's treasurer;

(c) With respect to Tenant's Second Cancellation Privilege, Tenant's gross sales, as defined in Clause 5 of this Lease, are less than $927,500.00 in each of the fourth, fifth and sixth lease years, to be evidenced by a certification of a certified public accountant and Tenant's treasurer;

(d) Tenant has continuously operated in the premises throughout the term of this Lease;

(e) Tenant provides said written registered mail notice to Landlord within ninety (90) days after said third lease year or said sixth lease year, as the case may be.

Provided Tenant has complied with subsections (a) through (e) above, this Lease shall be cancelled and terminated effective ninety (90) days after the written registered mail notice required in subsection (e) above is received by landlord. Tenant agrees that in the event it elects to cancel and terminate this Lease pursuant to this Clause 54, Tenant shall remit to Landlord, concurrently with its submission of the written registered mail notice referenced above, an amount equal to one hundred eighty (180) days Minimum Rent and Additional Rent oth-erwise payable under this Lease for the ensuing one hundred eighty (180) day period after the date of Tenant's written registered mail notice (in addition to the Minimum Rent and Additional Rent reserved in this Lease from the date of Tenant's notice through the cancellation date).

JA 137.

After the sixth year of the agreement, the Brown Group sought to terminate the lease. On September 21, 2001, it sent a letter to Kennedy Mall indicating that it was exercising its cancellation option under Clause 54 of the lease and enclosed a check for $25,673.00 "as payment for the termination penalty set forth in [Clause 54]." JA 19. As it turns out, the payment amount equaled the Minimum Rent for 180 days but did not include the 180 days of Additional Rent also due under Clause 54 or the "Minimum Rent and Additional Rent reserved in [the] Lease from the date of Tenant's notice through the cancellation date." JA 137. The Brown Group acknowledges that it inadvertently failed to include the 180 days' Additional Rent in the payment submitted with its notice.

On November 15, 2001, almost two months later, Kennedy Mall sent a letter to the Brown Group saying that the cancellation letter failed to terminate the lease because the $25,673.00 payment did not include all necessary payments—including the 180 days' Additional Rent and 90 days' Additional Rent and Minimum Rent—and explaining that the lease would remain in effect until the natural expiration date of June 30, 2005. Soon after receiving the letter, the Brown Group sent a $19,289.20 check to Kennedy Mall as payment for the 180 days' Additional Rent along with a letter dated November 30, 2001, which explained that the September 21, 2001 letter terminated the lease and which apologized

for the error in not submitting the full payment with the termination notice. In addition, the Brown Group continued to make monthly payments as ordinarily due under the lease which represented the "Minimum Rent and Additional Rent reserved in [the] Lease" from notice through cancellation. The last of these payments was sent on December 3, 2001. In other words, by December 3, 2001, Brown Group had paid for the 270 days of Additional and Minimum Rent required by Clause 54, and Kennedy Mall had accepted and deposited all of these payments. Because the Brown Group did not make the payments concurrently with its termination notice, however, Kennedy Mall notified Brown Group that it would treat the payments as future rents due under the lease, not as a cancellation payment.

On November 29, 2001, Kennedy Mall filed a declaratory-judgment action in state court seeking a declaration that the Brown Group failed properly to terminate the lease. The Brown Group removed the complaint to federal court based on the diversity of the parties, after which each party moved for summary judgment. The district court granted summary judgment in favor of the Brown Group, holding that it permissibly and properly terminated the lease.

## II.

We review a district court's grant of summary judgment anew and accordingly apply the same summary-judgment standard that a district court applies. *See Duane Mgmt. Co. v. Prudential Ins. Co.,* 29 F.3d 245, 248 (6th Cir.1994); Fed. R.Civ.P. 56. No factual disagreements cloud this dispute, and the parties agree that Ohio contract law governs it.

Under Ohio law, "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130, 509 N.E.2d 411, 413 (1987). "[W]here the terms [of a] contract are clear and unambiguous," a court must respect the contract's language and "cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 374 N.E.2d 146, 150 (1978).

The language of this contractual provision leaves little room for interpretation. By its terms, Clause 54 says that the tenant may terminate the lease if it satisfies five enumerated conditions. "Tenant is granted the right and privilege," the lease says, "to cancel and terminate this Lease . . . provided" it meets the requirements listed in paragraphs (a) through (e) of the lease. JA 137. All agree that the Brown Group met each of these conditions at the time it sent the termination notice to Kennedy Mall. Immediately after these five paragraphs, the lease reiterates the consequences of satisfying them: "Provided Tenant has complied with subsections (a) through (e) above, this Lease shall be cancelled and terminated ninety (90) days after the written registration mail notice required in subsection (e) above is received by Landlord." *Id.* Because the lease does not contain any other explicit termination preconditions and because the Brown Group satisfied the five preconditions that do exist, it permissibly terminated the lease.

It is not that simple, Kennedy Mall responds, in view of the next sentence of Clause 54: "Tenant agrees that in the event it elects to cancel and terminate this Lease pursuant to this Clause 54, Tenant shall remit to Landlord, *concurrently with* its submission of the written registered mail notice referenced above, an amount" of rent money expressly described in the agreement. *Id.* (emphasis added). Ac-

knowledging that full payment is "not listed with the earlier conditions," Kennedy Mall argues that "full payment remained a condition" of termination and that the Brown Group's failure to satisfy this requirement precluded early termination. Kennedy Mall Br. at 17.

This argument contains several flaws. First, the agreement explicitly lists five preconditions of early termination and just as explicitly does not make the payment obligation one of them. Second, the provision upon which Kennedy Mall relies appears *after* the following unqualified and mandatory language: "Provided Tenant has complied with the subsections of (a) through (e) above, this Lease shall be cancelled and terminated." JA 137. Only then does the agreement refer to the payment obligations of early termination. While the agreement understandably demands that the tenant make these early-rent payments "concurrently with" the termination notice, it does not make the payment obligation a precondition of a successful termination.

In suggesting that the payment obligation must be treated as a termination precondition in order to make it effective, Kennedy Mall sets up a false dichotomy. That the payment provision is not a part of the termination requirements does not make it unenforceable or for that matter ineffective; it merely means that the enforcement of this provision (through injunctive or money-damages relief) stands apart from whether the five requirements of termination have been satisfied. In other words, had the Brown Group failed to make this payment (which, to repeat, did not happen here because the company promptly made the payment upon learning of its mistake), Kennedy Mall could have enforced this contract requirement—like any other contract requirement in the agreement—in state court.

Nor can Kennedy Mall tenably argue that the failure to make the payment "concurrently with" the termination notice establishes that one of the cancellation preconditions was not met—namely, that "Tenant is not in default of any of the terms, covenants and provisions of this Lease *at that time.*" *Id.* (emphasis added). The "at that time" language refers to the time when the tenant sends the notice, not the time after the notice had been sent. As Kennedy Mall acknowledges, the Brown Group was not otherwise in default at the time it sent the notice.

Kennedy Mall's reliance on *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 613 N.E.2d 183 (1993) does not alter this conclusion. In that case, parents entered into contracts with the school stating that they would pay for all books, tuition and supplies for the academic year. *Id.* at 185. Each contract contained a clause that released the parents from the agreement provided they cancelled their child's enrollment in writing before August 1 of the approaching school year. *Id.* Mr. Carney mailed a letter notifying the school of his decision to withdraw his son postmarked August 7. *Id.* at 186. The court held that because he did not comply with the August 1 deadline, he did not effectively cancel the contract and was liable for full tuition for the academic year. *Id.* at 187. Yet that clause, unlike the clause in this case, said that "[e]nrollment ... may be cancelled in writing, without penalty ... prior to August 1. If enrollment is cancelled after August 1, parents ... are obligated to pay the full tuition. books and supplies charges." *Id.* at 185. In honoring the language of that clause, the Ohio Supreme Court in no way held or even suggested that courts should not honor the language of different clauses. Had Brown Group provided a cancellation notice after the 90–day window, we might well have a situa-

tion akin to *Lake Ridge Academy*. But that did not happen here, and there as a result any analogy between the two cases ends.

### III.

For the foregoing reasons, we affirm the opinion of the district court.