DECISION.
{¶ 1} Defendant-appellant, Ducru Limited Partnership, appeals the entry of summary judgment in favor of plaintiff-appellee, The Fifth Third Bank. We find no merit in Ducru's assignment of error, and we affirm the trial court's judgment.
 {¶ 2} The controversy in this case involved a commercial lease agreement and two amendments. Ducru was the landlord and Fifth Third was the tenant. The lease gave Fifth Third the right to terminate the lease any time after ten years. To exercise that right, Fifth Third had to provide written notice of its intent to terminate the lease and had to deliver a promissory note by the termination date, which was one year after the date of the notice.
 {¶ 3} The lease required the promissory note to be in a certain form and "in the amount of the Termination Payment[.]" The lease set forth a complex formula for determining the amount of the "Termination Payment." It also stated that "[i]f Tenant fails to execute and deliver the Promissory Note to Landlord on the Termination Date, then this Lease shall not terminate on the Termination Date, Tenant's election to exercise the Termination Option shall terminate and Tenant must comply again with all of the provisions of this Section 21.3 if Tenant elects to terminate this Lease."
 {¶ 4} Fifth Third submitted a termination notice to Ducru on August 28, 2002. It also submitted a promissory note, a full year before it was due, for $195,497, which it had calculated as the termination payment under the formula in the lease. Ducru acknowledged receiving the notice and the note, but stated that the proposed amount of the promissory note was not correct. Fifth Third wrote a letter back to Ducru asking for their "calculations and any comment with respect to the Promissory Note." Ducru responded to Fifth Third's letter, but failed to address the question of its calculation of the amount of the termination payment. Instead, it continued to maintain that it had not received an effective termination notice due to the incorrect amount of the note.
 {¶ 5} On August 28, 2003, the due date of the promissory note under Fifth Third's August 28, 2002, termination notice, Fifth Third executed and delivered a proposed promissory note for $195,497.69. Finally, on September 8, 2003, Ducru informed Fifth Third that they believed that the termination payment embodied in the promissory note should have been $267,571.04. Fifth Third checked its calculations, admitted that the amount in its promissory note was incorrect, and submitted a revised promissory note for $210,927.72, which they contended was the correct amount under their calculations. Ducru refused to accept the promissory note.
 {¶ 6} Both parties subsequently filed complaints for declaratory judgment, asking the trial court to declare the rights and obligations related to Fifth Third's right of termination under the lease and its amendments. The trial court granted summary judgment in favor of Fifth Third in all respects, and Ducru appealed to this court.
 {¶ 7} In the appeal, Ducru argued that one of the amendments to the lease had eliminated Fifth Third's termination right. We rejected that argument, stating that "[a]s long as Fifth Third met the requirements of the original lease, it could have terminated the lease any time after its tenth year. * * * Because the amendments * * * did not even mention — let alone eliminate — Fifth Third's Termination Right, that right remained in full force and effect. Summary judgment in favor of Fifth Third was therefore appropriate on this issue." Fifth Third Bank v.Ducru Ltd. Partnership, 157 Ohio App.3d 463, 2004-Ohio-1801,811 N.E.2d 1165, at ¶ 16-17.
 {¶ 8} Ducru also argued that because Fifth Third had failed to timely remit the proper promissory note, the lease was not terminated. We again stated that Fifth Third could exercise its termination right as long as it gave the required notice and delivered a promissory note by the termination date set forth in the lease. But we pointed out that the trial court had entered its judgment on August 29, 2003, and that the trial court had ordered that Fifth Third's "written Notice of Termination be given full consideration and enforcement thereby terminating the lease effective August 31, 2003 * * *." We stated, "The lease could not have terminated until Fifth Third executed and delivered the promissory note. And the trial court could not have determined from the evidence available at the time that Fifth Third had executed and delivered the promissory note by August 31, 2003." Id., at ¶ 22.
 {¶ 9} Thus, we held that the trial court's determination that the lease terminated on August 31, 2003, had been premature because it had entered the judgment two days before the promissory note had been due. Id., at ¶ 23. While we affirmed "that part of the trial court's judgment that gave effect to Fifth Third's Termination Right," we reversed the trial court's "determination that the lease was effectively terminated as of August 31, 2003." Id., at ¶ 25. We remanded the case "for a determination of whether Fifth Third fulfilled its promissory-note obligations before August 31, 2003." Id., at ¶ 24.
 {¶ 10} On remand, the trial court expressed confusion over the meaning of our remand, which we admit was "less than clear." It correctly framed the issue as "Did Fifth Third properly exercise the termination option by timely tendering the appropriate and legally sufficient promissory note required by the Lease Agreement?" The court answered this question affirmatively. It found that Fifth Third had notified Ducru of its intention to terminate the lease, and that Fifth Third had acted in good faith and had substantially complied with the terms of the lease. Consequently, the court granted Fifth Third's motion for summary judgment and overruled Ducru's. It also agreed with Fifth Third's calculations and found that the proper amount of the termination payment embodied in the promissory note was $210,927.72 plus interest, under the terms of the lease and statutory authority. This appeal followed.
 {¶ 11} In its sole assignment of error, Ducru contends that the trial court erred in granting Fifth Third's motion for summary judgment and in denying its motion. It argues that under the plain language of the lease, Fifth Third's election to exercise the "Termination Option" lapsed on August 31, 2003, because it had failed to timely tender the promissory note. It also argues that the "Termination Option" was a unilateral contract right, to which the doctrine of substantial performance did not apply. Finally, it contends that the trial court's calculation of the appropriate amount of the promissory note was incorrect. This assignment of error is not well taken.
 {¶ 12} Ducru relies on Section 21.3(a) of the lease, which, in its entirety, provided as follows: "Tenant shall have the right to terminate this Lease (the "Termination Option") in its entirety at any time after the expiration of Lease Year 10, provided that Tenant (i) furnishes Landlord with written notice (the "Termination Notice") no later than the date (the "Termination Exercise Date") which is twelve (12) months prior to the date (the "Termination Date") set forth in the Termination Notice as the date on which the Tenant elects to terminate this Lease (which Termination Date must not be earlier than twelve (12) months after the Termination Exercise Date), and (ii) executes and delivers to Landlord on or before the Termination Date, the Promissory Note (defined below). If Tenant complies with the provisions of (i) and (ii) above, then this Lease shall terminate on the Termination Date and neither party shall have any further obligations under this Lease (but Tenant shall continue to be obligated to landlord on the Promissory Note) from and after the Termination Date. If Tenant fails to execute and deliver the Promissory Note to Landlord on the Termination Date, then this Lease shall not terminate on the Termination Date, Tenant's election to exercise the Termination Option shall terminate and Tenant must comply again with all of the provisions of this Section 21.3 if Tenant elects to terminate this Lease." Section 21.3(b) provides the formula for calculating the termination payment and the form of the promissory note.
 {¶ 13} In the construction of a written instrument, a court's primary objective is to determine and give effect to the parties' intent, which it can find in the language they chose to use. The court will read the writing as a whole and gather the intent of each part from a consideration of the whole. Foster WheelerEnviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.
(1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519; M.G.A., Inc. v.Amelia Station, Ltd., 1st Dist. No. C-010606, 2002-Ohio-5091, at ¶ 10.
 {¶ 14} The interpretation of a written instrument is, in the first instance, a matter of law for the court. If it is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations. Instead, the court must give effect to the contractual language.Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53, 544 N.E.2d 920; M.G.A., Inc., supra, at ¶ 9. But if the provisions of a contract are ambiguous, an issue of fact exists, making summary judgment inappropriate. Inland RefuseTransfer Co. v. Browning-Ferris Indus. of Ohio, Inc. (1984),15 Ohio St.3d 321, 322, 474 N.E.2d 271; M.G.A., Inc., supra, at ¶ 9.
 {¶ 15} The lease's plain and unambiguous language requires Fifth Third to provide a termination notice and a promissory note within a certain time frame. The record is clear that Fifth Third did provide the required notice and promissory note within the lease's time requirements. The only dispute involved the amount of the promissory note.
 {¶ 16} Ducru argues that because Fifth Third did not provide a promissory note in the proper amount, even though Ducru refused to tell Fifth Third its calculation of the proper amount, Fifth Third's attempt to exercise its termination right was void. Therefore, Ducru argues, the lease did not terminate on the date set forth in the termination notice. We disagree. Under the plain language of the agreement, Fifth Third effectively exercised its termination right, and that right was not nullified by its failure to make the promissory note in the exact amount.
 {¶ 17} We agree with the trial court that Fifth Third substantially complied with its obligations under the lease. A default by a party who has substantially performed does not relieve the other party from performance. Thomas D. Reynolds Assoc., Inc. v. Feeks (Feb. 6, 1991), 1st Dist. No. C-890695. "In the law of contracts, `substantial performance' is [an] approximation of full performance such that the parties obtain, in the main, what the contract called for, although it is not complete and final performance in every particular." StoneExcavating, Inc. v. Newmark Homes, Inc., 2nd Dist. No. 20307,2004-Ohio-4119, at ¶ 13.
 {¶ 18} A party is in substantial compliance with its promises when its deviations are nominal, trifling, technical, slight, and consistent with an honest effort to perform. Interstate GasSupply, Inc. v. Calex Corp., 10th Dist. No. 04AP-980, 2006-Ohio-638, at ¶ 35; Ehrhardt v. Hamilton Fan Blower Co.
(Mar. 1, 1986), 1st Dist. Nos. C-850265 and C-850266. For the doctrine of substantial performance to apply, the unperformed duties must not destroy the value or purpose of the contract.Hansel v. Creative Concrete Masonry Constr. Co.,148 Ohio App.3d 53, 56, 2002-Ohio-198, 772 N.E.2d 138; Interstate GasSupply, Inc., supra, at ¶ 35. When the facts are undisputed, whether a party's conduct constitutes substantial performance is a question of law for the court. Interstate Gas Supply, Inc.,
supra, at ¶ 35.
 {¶ 19} The trial court correctly pointed out that Fifth Third had given Ducru notice of its intent to terminate the lease, and that it clearly had attempted to comply with the lease's requirements for the promissory note. Its failure to correctly calculate the termination payment using the complicated formula in the lease did not destroy the purpose and intent of the contract. Further, a deficiency of several thousand dollars in the promissory note in the context of a multi-million-dollar, twelve-year commercial lease was a slight and technical deviation from the terms of the contract.
 {¶ 20} Ducru contends that because the "Termination Option" was a unilateral contract right, the doctrine of substantial performance did not apply. It argues that because the contract specified the time and manner of exercising this unilateral right, any attempt to exercise it in any other manner was ineffective. This argument is not persuasive.
 {¶ 21} First, Ducru relies on numerous cases involving option contracts. An option contract is a separate agreement to leave an offer open for a specified period of time. Molnar v. Castle BailBonds, Inc., 4th Dist. No. 04CA2808, 2005-Ohio-6643, at ¶ 46;Aldahan v. Tansky Sales, Inc. (June 20, 2000), 10th Dist. No. 99AP-651. It limits the customary power of an offeror to revoke the offer prior to acceptance. Ritchie v. Cordray (1983),10 Ohio App.3d 213, 215, 461 N.E.2d 325. Thus, to be binding, an option must be exercised in the time and manner provided in the instrument creating the option. Id.; Molnar, supra, at ¶ 46.
 {¶ 22} This case involved a termination right in a contract, something entirely different. As we pointed out in the previous appeal, the "Termination Option" in the contract was just another name for the "Termination Right." Fifth Third Bank, supra, at ¶ 4. A provision in a contract creating a power to terminate is not itself a contract. It does not have its own separate consideration, and it is merely a subsidiary provision in a contract with a different name and made for a different purpose. It gives a party a choice between terminating and not terminating, but it creates no power of acceptance. 3-11 Corbin on Contracts (2006), Section 11.9. Therefore, the cases Ducru cites involving option contracts are not dispositive.
 {¶ 23} Further, our review of the contract shows that the conditions precedent to Fifth Third exercising its termination right were that it provide a termination notice and a promissory note with a termination payment within the specified time. Fifth Third fulfilled both of those conditions, the object of which was to give Ducru sufficient notice of the lease's termination and a method for repayment of the Tenant Improvement Allowance it had previously advanced.
 {¶ 24} Under the language of the lease, an exactly correct calculation of the termination payment was not a condition precedent to an effective termination. Therefore, the doctrine of substantial performance applies to that calculation. See Kaufmanv. Byers, 159 Ohio App.3d 238, 2004-Ohio-6346, 823 N.E.2d 530, ¶ 28-31. Ducru's hypertechnical interpretation of the lease would defeat Fifth Third's termination right, given the complexity of the termination-payment calculation. See Heider v. Glasstech,Inc. (July 16, 1999), 6th Dist. No. WD-98-052.
 {¶ 25} Thus, this case is distinguishable from Lake RidgeAcademy v. Carney (1993), 66 Ohio St.3d 376, 613 N.E.2d 183, upon which Ducru relies. In that case, parents entered into contracts with a school in which they agreed to pay for all books, tuition and supplies for the child for the academic year. Each contract contained a clause that released the parents from their agreement if they cancelled their child's enrollment in writing before August 1 of the approaching school year. Mr. Carney's letter withdrawing his son from enrollment was postmarked on Aug. 7.
 {¶ 26} The trial court held that Mr. Carney had not breached the contract because he had substantially complied with its terms. The Ohio Supreme Court disagreed. It stated that "the doctrine of substantial performance is not germane to our analysis. * * * Carney did not comply at all with the requirement that cancellation take place prior to August 1." Id. at 379, 613 N.E.2d 183. [Emphasis in original.]
 {¶ 27} The court went on to state, "While not precisely the same, this contract is similar to an option contract and a similar approach is appropriate. In an option contract, a party may exercise its option only in the manner provided in the contract. * * * If a time limit is given for exercising the option, the option may not be exercised after that time has passed." Id. at 380, 613 N.E.2d 183. (Emphasis in original.) (Citations omitted). Thus, the court held that "[u]nder a school reservation agreement, when a parent is given the option to cancel the agreement before a certain date without incurring liability for the full tuition and does not do so, the parent may become liable for the full tuition if the contract so provides. The parent's notification of cancellation, if given after the option date, is ineffective to discharge this liability." Id., syllabus.
 {¶ 28} In Lake Ridge, the deciding issue was timeliness. That case would have been dispositive if Fifth Third had failed to tender its promissory note within the time frame provided for in the lease. If it had not, it would not have exercised its right in the time and manner provided for in the lease. But, in this case, Fifth Third fully complied with the conditions precedent to exercising its termination right and substantially complied with its other duties under the lease. See KennedyMall, Ltd. v. Brown Group Retail, Inc. (C.A.6, 2004), 103 Fed. Appx. 861, 862, and 864-865.
 {¶ 29} Accordingly, we conclude that, as a matter of law, Fifth Third properly exercised its termination right by timely tendering a promissory note as provided for in the lease. Its failure to make the promissory note in the correct amount did not nullify the termination right.
 {¶ 30} Ducru also takes issue with the trial court's calculation of the proper amount of the promissory note. The court accepted Fifth Third's calculation of $210,927.72. Ducru contends the proper amount was $267,571.64.
 {¶ 31} Section 21.3(b) of the original Lease Agreement states that the promissory note shall be "in the amount of the principal and interest payments for the Assumed Loan comprising the Termination Payment[.]" It also states that "the Termination Payment shall be determined by assuming a hypothetical loan ("Assumed Loan") with a term equal to the Initial Term of this Lease and an initial principal balance equal to the Amount (defined below), bearing interest at ten percent (10%) per annum, amortized over the term of the Assumed Loan and payable in equal month installments of principal and interest over such term of the Assumed Loan. As used herein, "Amount" shall mean the amount of the Tenant Improvement Allowance (defined in Exhibit B). As used herein, "Termination Payment" shall mean the amount of the hypothetical monthly principal and interest payments that would have been owing from and after the Termination Date through the remainder of the term of the Assumed Loan."
 {¶ 32} The only factor in dispute was the number of months over which monthly interest payments on the promissory note for the tenant improvement allowance were to be amortized. Fifth Third's calculation used 144 months, which it contends is the "Initial Term" of the lease under the terms of the original lease document. We agree. The plain, unambiguous language of Section 21.3(b) states that the "Assumed Loan" shall have a term equal to the "Initial Term of this Lease."
 {¶ 33} Ducru's calculation was based on a term of 151.65 months, which it contends is proper under the second amendment to the lease. In that amendment, Fifth Third agreed to lease a significant amount of additional space at an adjusted rate and received a right of first refusal on even more additional space. The amendment did extend the termination date for the lease, but it contained no provision relating to the "Initial Term" of the lease. Further, it said nothing about Fifth Third's termination right. To the contrary, it specifically stated that "[e]xcept as modified by this Amendment, the Lease remains in full force and effect."
 {¶ 34} We find no issues of material fact. Construing the evidence most strongly in Ducru's favor, we hold that reasonable minds could come to but one conclusion — that Fifth Third properly exercised its termination right by timely tendering a promissory note as provided for in the lease, and that Fifth Third's calculation of the amount of the promissory note was correct. Fifth Third was entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in its favor. See Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46; Stinespring v. Natorp Garden Stores,Inc. (1998), 127 Ohio App.3d 213, 215-216, 711 N.E.2d 1104. We overrule Ducru's assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt, P.J., Doan and Sundermann, JJ.